UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------------------X

ELMER ROMERO, KEVIN OCHOA, and ALIRIO PEREIRA,
individually and on behalf of all others similarly situated,

                                      Civil Action No.

                     Plaintiffs,

                                      COMPLAINT

                -against-

GYK DRYWALL, INC., CEIBA SERVICES LLC,
ALLSTATE INTERIORS, INC., and DANILO VALLE,

                                Defendants.

-----------------------------------------------------------------------X

Plaintiffs Elmer Romero, Kevin Ochoa, and Alirio Pereira (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, Katz Melinger PLLC, complaining of the defendants, GYK Drywall, Inc. ("GYK"), Ceiba Services LLC ("Ceiba"), Allstate Interiors, Inc. ("Allstate"), and Danilo Valle (collectively "Defendants") respectfully allege as follows:

## I. Nature of Action, Jurisdiction, and Venue

1.     This is an action seeking equitable and legal relief for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA"), the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56(a) *et seq*. ("NJWHL"), the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq*. ("NJWPL"), and for breach of contract.

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

3.     This Court has supplemental jurisdiction over the NJWHL, the NJWPL, and the breach of contract claims, pursuant to 28 U.S.C. § 1367, in that the state law claims are so closely

related to Plaintiffs' FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

## II. Parties

5.      Plaintiffs are individuals residing in the state of New Jersey.

6.      At all relevant times, Plaintiffs were employed by Defendants as defined by 29 U.S.C. § 203(e), N.J.S.A. 34:11-56a1(h), N.J.S.A. 34:11-4.1(b), and N.J.S.A. 34:19-2.

7.      While employed with Defendants, Plaintiffs were regularly engaged in interstate commerce and/or in the production of goods for commerce.

8.      Defendant GYK is a domestic corporation with its principal place of business located at 184 Redmond Street, New Brunswick, New Jersey 08901.

9.      Defendant Ceiba is a domestic limited liability company with its principal place of business located at 222 Bond Street, Elizabeth, New Jersey 07206.

10.      GYK and Ceiba are construction companies that provide labor and related services for drywall installation and other construction tasks.

11.      Defendant Allstate is a New York corporation with its principal place of business located at 1195 NY-208, Suite 2, Monroe, New York 10950.

12.      Allstate is a construction company that provides drywall, tile ceiling systems, and metal framing products and services to residential and commercial properties in several states along the east coast of the United States, including New York and New Jersey.

13.     Defendant Valle is an individual residing, upon information and belief, in the state of New Jersey.

14.     At all relevant times, Valle was, and still is, an officer, director, shareholder, and/or person in control of GYK and Ceiba who exercises significant control over the companies' operations and has the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records.

15.     Upon information and belief, during all relevant times, GYK and Ceiba had common owners, officers, and directors, and were jointly controlled and operated by Valle.

16.     Upon information and belief, GYK and Ceiba used the same phone numbers and email addresses for their customers.

17.     Upon information and belief, GYK and Ceiba used the same equipment and inventory.

18.     Upon information and belief, GYK and Ceiba provided services to their customers without alerting the customers that they were different entities.

19.     Throughout Plaintiffs' employment, Allstate was hired to provide construction services for four (4) residential and commercial construction projects in New Jersey and New York (the "Worksites").

20.     Upon information and belief, Allstate hired GYK and/or Ceiba to supply workers to perform drywall installation and other construction services for Allstate at the Worksites.

21.     GYK, Ceiba, and Valle hired Plaintiffs and assigned them to work as laborers at the Worksites.

22.     Plaintiffs performed their job duties at the Worksites.

3

23.     At all relevant times, Allstate was a client employer within the meaning of N.J.S.A. 34:11-58.2(d).

24.     At all relevant times, GYK and Ceiba were labor contractors within the meaning of the N.J.S.A. 34:11-58.2(d).

25.     The supervising foremen at each of the Worksites were employees of Allstate.

26.     These supervising foremen often directed GYK and/or Ceiba employees, including Plaintiffs, as to their job duties and responsibilities at the Worksites and often instructed Valle to stop bringing certain workers to the Worksites because they felt the employees were underperforming.

27.     Upon information and belief, at all relevant times, GYK, Ceiba, and Valle had the power to discipline and terminate Plaintiffs.

28.     Upon information and belief, at all relevant times, GYK, Ceiba, and Valle were responsible for compensating Plaintiffs.

29.     Defendants are joint employers who jointly managed, supervised, hired, fired, and controlled Plaintiffs' compensation, and are jointly and severally liable in this matter.

30.     At all relevant times, Plaintiffs were covered employees within the meaning of the FLSA and the NJWHL.

31.     Defendants are covered employers within the meaning of the FLSA and the NJWHL and, at all relevant times, employed Plaintiffs.

32.     Upon information and belief, at all relevant times, Defendants' gross revenues were in excess of $500,000.00 per year.

33.     Defendants operate in interstate commerce.

34.     Defendants are subject to suit under the statutes alleged above.

### III. FLSA and NJWPL Collective Action Allegations

35.     The First Cause of Action in this Complaint, which arises out of the FLSA, is brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed since the date three (3) years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

36.     The Second and Fifth Causes of Action in this Complaint, which arise out of the NJWPL, are brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed since the date six (6) years prior to the filing of this Complaint and who elect to opt-in to this action (the "NJWPL Collective Plaintiffs").

37.     The FLSA and NJWPL Collective Plaintiffs (collectively, the "Collective Plaintiffs") consist of no less than sixty (60) similarly situated employees employed by GYK, Ceiba and/or Allstate as laborers, laborers' assistants and drivers, who work or worked in excess of forty (40) hours per week and are victims of Defendants' common policies and practices that have violated their rights under the FLSA and NJWPL by, *inter alia*, willfully denying them overtime wages.

38.     As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NJWPL. This policy and pattern or practice includes, *inter alia*, failing to pay employees the applicable overtime rates for all time worked in excess of forty (40) hours per week.

39.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

40.     Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiffs and the Collective Plaintiffs.

41.     The Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b) and N.J.S.A. 34:11-4.1.

## IV. Factual Allegations

### Plaintiff Elmer Romero

42.     Plaintiff Romero was employed by Defendants as a laborer and driver from in or around February 2018 until in or around April 2019.

43.     As a laborer, Romero's principal job duties included framing work, sheetrock and drywall installation, and performing various other construction tasks as required by Defendants.

44.     Throughout his employment, Romero regularly worked Mondays through Saturdays from approximately 7:00 a.m. until 3:30 p.m., with a thirty (30) minute daily meal break, for an average of approximately forty-eight (48) hours per week.

45.     In addition to his regularly scheduled work hours, Romero was required to drive other employees to and from the Worksites.

46.     GYK and/or Ceiba owned several SUVs and passenger vans whose capacities ranged from approximately eight (8) to fifteen (15) passengers.

47.     From the start of his employment until in or around September 2018, Romero was required to pick up a company vehicle at Valle's mother's home before the start of the workday, and then drop off the company vehicle back at Valle's mother's home at the end of the workday.

48.    During this time period, Romero typically arrived at Valle's mother's home at approximately 5:00 a.m. to pick up one of the company-owned vehicles, and then used that vehicle to pick up other employees at their homes and drive them to the Worksite, typically arriving by 7:00 a.m.

49.    Depending on which vehicle Defendants assigned him, Romero would transport between seven (7) and fourteen (14) other employees to the Worksite each workday.

50.    At the end of each workday, Romero was required to drive employees from the Worksite back to their homes before returning the vehicle to Valle's mother's home, typically arriving at Valle's mother's home between 5:30 p.m. and 6:00 p.m.

51.    During this time period, between his regularly scheduled work hours at the Worksite and the time he spent driving other employees to and from the Worksite each day, Romero worked a total of approximately seventy-three and one-half (73.5) hours per week.

52.    Starting in or around October 2018, several of the GYK/Ceiba company vehicles often had mechanical issues and were unusable.

53.    Around this time, Valle asked Romero to use Romero's personal vehicle to transport employees to and from the Worksites when there was no functioning company vehicle available. In exchange, Valle informed Romero that he would reimburse Romero for all gasoline and toll expenses Romero incurred.

54.    Romero accepted Valle's offer and used his personal vehicle to transport employees to and from the Worksites approximately one-third (1/3) of the days that he drove employees to and from the Worksites.

55.     On days that Romero used his personal vehicle, he typically began picking up employees at approximately 5:15 a.m. and typically finished dropping employees off between approximately 5:15 p.m. and 5:45 p.m.

56.     From in or around October 2018 until the end of his employment, in weeks that Romero used his personal vehicle to transport employees to and from the Worksites, Romero worked a total of approximately seventy and one-half (70.5) hours per week between his regularly scheduled work hours and the time he spent driving other employees to and from the Worksite each day.

57.     Throughout Romero's employment, Defendants paid Romero a fixed rate of $150.00 per day regardless of the number of hours he worked.

58.     Romero was not paid any wages for the final three (3) days he worked for Defendants.

59.     Defendants also failed to reimburse Romero approximately $100.00 in expenses for gasoline and toll purchases.

<u>Plaintiff Kevin Ochoa</u>

60.     Plaintiff Ochoa was employed by Defendants as a laborer and driver from on or around November 1, 2017 until on or around May 4, 2019.

61.     As a laborer, Ochoa's principal job duties included framing work, sheetrock and drywall installation, and performing various other construction tasks as required by Defendants.

62.     Throughout his employment, Ochoa regularly worked Mondays through Saturdays from approximately 7:00 a.m. until 3:30 p.m., with a thirty (30) minute daily meal break, for an average of approximately forty-eight (48) hours per week.

63.     In addition to his regularly scheduled work hours, Ochoa was required to drive other employees to and from the Worksites.

64.     From the start of his employment until in or around September 2018, Ochoa was required to pick up a company vehicle at Valle's mother's home before the start of the workday, and then drop off the company vehicle back at Valle's mother's home at the end of the workday.

65.     During this time period, Ochoa typically arrived at Valle's mother's home at approximately 5:00 a.m. to pick up one of the company-owned vehicles, and then used that vehicle to pick up other employees at their homes and drive them to the Worksite, typically arriving by 7:00 a.m.

66.     Depending on which company vehicle he was assigned that day, Ochoa would transport between seven (7) to fourteen (14) other employees.

67.     At the end of each workday, Ochoa was required to drive employees from the Worksite back to their homes before returning the vehicle to Valle's mother's home, typically arriving at Valle's mother's home between 5:30 p.m. and 6:00 p.m.

68.     During this time period, between his regularly scheduled work hours and the time he spent driving other employees to and from the Worksite each day, Ochoa worked a total of approximately seventy-three and one-half (73.5) hours per week.

69.     In or around October 2018, Valle asked Ochoa to use Ochoa's personal vehicle to transport other employees to and from the Worksite when there was no company vehicle available. In exchange, Valle informed Ochoa that he would reimburse Ochoa for all gasoline and toll expenses incurred.

70.     Ochoa accepted Valle's offer and used his personal vehicle to transport employees to and from the Worksites approximately one-third (1/3) of the days that he drove employees to and from the Worksites.

71.     On days that Ochoa used his personal vehicle, he typically began picking up employees at approximately 5:15 a.m. and typically finished dropping employees off between approximately 5:15 p.m. and 5:45 p.m.

72.     From in or around October 2018 until the end of his employment, in weeks that Ochoa used his personal vehicle to transport employees to and from the Worksites, Ochoa worked a total of approximately seventy and one-half (70.5) hours per week between his regularly scheduled work hours at the Worksite and the time he spent driving other employees to and from the Worksite each day.

73.     From on or around November 1, 2017 until on or around April 15, 2019, Defendants paid Ochoa a fixed rate of $150.00 per day regardless of the number of hours he worked.

74.     From on or around April 16, 2019 until on or around May 4, 2019, Defendants paid Ochoa a fixed rate of $170.00 per day regardless of the number of hours he worked.

75.     Ochoa was not paid any wages for the last three (3) days he worked for Defendants.

76.     Ochoa was also not paid $270.00 in owed reimbursements for gasoline and toll purchases.

<u>Plaintiff Alirio Pereira</u>

77.     Plaintiff Pereira was employed by Defendants as a laborer from in or around March 2018 until in or around April 2019.

78.     As a laborer, Pereira's principal job duties included framing work, sheetrock and drywall installation, and performing various other construction tasks as required by Defendants.

79.     Throughout his employment, Pereira regularly worked Mondays through Saturdays from approximately 7:00 a.m. until 3:30 p.m., with a thirty (30) minute daily meal break, for an average of approximately forty-eight (48) hours per week.

80.     Throughout Pereira's employment, Defendants paid Pereira a fixed rate of $130.00 per day regardless of the number of hours he worked.

81.     Pereira was not paid any wages for the last eleven (11) days he worked for Defendants.

Claims Common to All Plaintiffs and Collective Plaintiffs

82.     Throughout their employment with Defendants, Plaintiffs were non-exempt employees pursuant to the FLSA and NJWHL, and were entitled to overtime compensation.

83.     Despite routinely working more than forty (40) hours per week, Plaintiffs were not paid overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for the hours they worked over forty (40) per week.

84.     Defendants neither tracked the hours Plaintiffs worked nor required Plaintiffs to record their time.

85.     Plaintiffs are aware of other current and/or former employees of Defendants who were not paid overtime compensation despite working over forty (40) hours per week.

86.     Defendants also failed to pay Plaintiffs any wages during the last three (3) to eleven (11) days of work, and therefore failed to pay Plaintiffs at least the applicable minimum wage for all hours worked during their respective final days of work.

87.     Moreover, Valle, GYK, and Ceiba failed to reimburse Romero and Ochoa for expenses incurred, including for gasoline and tolls, despite their promise to do so.

88.     Defendants violated federal and state law by willfully failing to pay Plaintiffs and the Collective Plaintiffs overtime compensation and other wages owed to them.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS
*(Overtime Violations under the FLSA)*

89.     Plaintiffs, individually and on behalf of the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

90.     Pursuant to the applicable provisions of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular rates of pay or the minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

91.     Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

92.     Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for each hour worked in excess of forty (40) hours in a week.

93.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required overtime wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

94.     As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are

entitled to additional damages equal to one hundred percent (100%) of the total wages due to them ("liquidated damages").

95.     Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE NJWPL COLLECTIVE PLAINTIFFS
*(Overtime Violations under the New Jersey Wage and Hour Law)*

96.     Plaintiffs, individually and on behalf and the NJWPL Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

97.     Pursuant to the applicable provisions of N.J.S.A. 34:11-56a(4), Plaintiffs and the NJWPL Collective Plaintiffs were entitled to overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

98.     Plaintiffs and the NJWPL Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

99.     However, Defendants knowingly failed to pay Plaintiffs and the NJWPL Collective Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for each hour worked in excess of forty (40) per week.

100.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the NJWPL Collective Plaintiffs the required overtime wages, Plaintiffs and the NJWPL Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with reasonable attorneys' fees, interest, and costs.

101.    As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and NJWPL Collective Plaintiffs are entitled to liquidated damages in an amount equal to two hundred percent (200%) of their unpaid wages.

45.    Judgment should be entered in favor of Plaintiffs and the NJWPL Collective Plaintiffs and against Defendants on the Second Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees, interest, costs, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Minimum Wage Violations under the FLSA)*

59.    Plaintiffs repeat and reallege all prior allegations set forth above.

60.    Pursuant to the applicable provisions of the FLSA, Plaintiffs were entitled to receive at least the statutory minimum hourly wage for all of the hours they worked.

61.    During the final days of Plaintiffs' respective employments, Defendants knowingly failed to pay Plaintiffs any wages, and therefore failed to pay Plaintiffs at least the statutory minimum wages for the hours they worked during such days.

62.    As a result of Defendants' violations of the law and failure to pay Plaintiffs the required minimum wages, Plaintiffs have been damaged and are entitled to recover from Defendants all minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

63.    As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

64.    Judgment should be entered in favor of Plaintiffs and against Defendants on the Third Cause of Action in the amount of their respective unpaid minimum wages, liquidated

damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS**
*(Minimum Wage Violations under the NJWHL)*

65.     Plaintiffs repeat and reallege all prior allegations set forth above.

66.     Pursuant to the applicable provisions of the NJWHL, Plaintiffs were entitled to receive at least the statutory minimum wage for all hours worked.

67.     During the final days of Plaintiffs' respective employments, Defendants knowingly failed to pay Plaintiffs any wages, and therefore failed to pay Plaintiffs at least the statutory minimum wages for the hours they worked during such days.

68.     As a result of Defendants' violations of the law and failure to pay Plaintiffs the required minimum wages, Plaintiffs have been damaged and are entitled to recover from Defendants all minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

69.     As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

70.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Fourth Cause of Action in the amount of their respective unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF
PLAINTIFFS, INDIVIDUALLY, AND THE NJWPL COLLECTIVE PLAINTIFFS**
*(Failure to Timely Pay Wages in Violation of New Jersey Wage Payment Law)*

102.    Plaintiffs, individually and on behalf of the NJWPL Collective Plaintiffs, repeat and reallege all prior allegations.

103.    At all relevant times, Defendants failed to pay Plaintiffs and the NJWPL Collective Plaintiffs the full amount of wages due to them, including overtime wages, at least twice during each calendar month, on regular paydays designated in advance, in violation of N.J.S.A. 34:11-4.2.

104.    Defendants also failed to pay Plaintiffs and the NJWPL Collective Plaintiffs all wages due to them, including overtime wages, not later than the regular payday for the pay period in which they were terminated, in violation of N.J.S.A. 34:11-4.3.

105.    As a result of Defendants' violations of the law and failure to pay Plaintiffs and the NJWPL Collective Plaintiffs all wages due in a timely manner, Plaintiffs and the NJWPL Collective Plaintiffs have been damaged and are entitled to recover from Defendants all unpaid wages, along with interest and costs.

106.    As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and NJWPL Collective Plaintiffs are entitled to liquidated damages in an amount equal to two hundred percent (200%) of their unpaid wages.

107.    Judgment should be entered in favor of Plaintiffs and the NJWPL Collective Plaintiffs and against Defendants on the Fifth Cause of Action in the amount of their respective unpaid wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF ROMERO AND OCHOA AGAINST VALLE, GYK, AND CEIBA**
(Breach of Contract)

108.    Plaintiffs repeat and reallege all prior allegations.

16

109.     In or around late 2018, Romero and Ochoa entered into an agreement with Valle, GYK, and Ceiba, whereby Valle, GYK, and Ceiba agreed to reimburse to Romero and Ochoa certain expenses, such as gasoline and tolls, incurred by Romero and Ochoa, respectively, for using their personal vehicles to transport employees to and from the Worksites.

110.     Beginning in or around October 2018, Romero and Ochoa routinely transported employees to and from the Worksites using their personal vehicles, and incurred costs for gasoline and tolls in the performance of their obligations under their agreement with Valle, GYK, and Ceiba.

111.     Valle, GYK, and Ceiba breached their agreements with Romero and Ochoa by failing to reimburse Romero and Ochoa for all expenses they incurred, such as gasoline and tolls, transporting employees to and from the Worksites using their personal vehicles.

112.     Romero has been damaged and is entitled to recover from Valle, GYK, and Ceiba $100.00 for their breach of their agreement to reimburse Romero for all expenses incurred.

113.     Ochoa has been damaged and is entitled to recover from Valle, GYK, and Ceiba $270.00 for their breach of their agreement to reimburse Ochoa for all expenses incurred.

114.     Judgment should be entered in favor of Romero and Ochoa and against Valle, GYK, and Ceiba on the Sixth Cause of Action in the amount of $100.00 as to Romero and $270.00 as to Ochoa, plus interest.

### AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS AGAINST GYK AND CEIBA
(*Corporate Combine*)

115.     Plaintiffs repeat and reallege all prior allegations as set forth above.

116.     Upon information and belief, GYK and Ceiba operated as a single business operation.

117.    Upon information and belief, GYK's and Ceiba's records were maintained by the same persons and entities.

118.    Upon information and belief, GYK and Ceiba employed many of the same employees.

119.    Upon information and belief, GYK and Ceiba were each merely fragments of a larger business.

120.    Upon information and belief, GYK and Ceiba were not maintained as separate corporate entities.

121.    Judgment should be entered on the Seventh Cause of Action in favor of Plaintiffs and against GYK and Ceiba, determining that GYK and Ceiba were merely part of a corporate combine and declaring GYK and Ceiba liable for each other's debts and for all amounts due in the First through Sixth Causes of Action herein, and for such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE** Plaintiffs prays for relief as follows:

a)  on the First Cause of Action for all overtime wages due to Plaintiffs and the FLSA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

a)  on the Second Cause of Action for all overtime wages due to Plaintiffs and the NJWPL Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

b)  on the Third Cause of Action for all for all minimum wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

c) on the Fourth Cause of Action for all for all minimum wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

d) on the Fifth Cause of Action for all unpaid wages due to Plaintiffs and the NJWPL Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

e) on the Sixth Cause of Action in the amount of $100.00 for Romero and $270.00 for Ochoa;

f) on the Seventh Cause of Action for an order and judgment determining that GYK and Ceiba were merely part of a corporate combine and declaring GYK and Ceiba liable for each other's debts and for all amounts due in the First through Sixth Causes of Action herein;

g) interest;

h) costs and disbursements; and

i) such other and further relief as is just and proper.


Dated: New York, New York
       April 16, 2020


/s/ Adam Sackowitz
Adam Sackowitz
Katz Melinger PLLC
280 Madison Avenue, Suite 600
New York, New York 10016
t: (212) 460-0047
f: (212) 428-6811
ajsackowitz@katzmelinger.com
*Attorneys for Plaintiffs*

19