UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELMER ROMERO, KEVIN OCHOA, and ALIRIO PEREIRA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GYK DRYWALL, INC., CEIBA SERVICES LLC, ALLSTATE INTERIORS, INC., and DANILO VALLE,<br><br>Defendants. | Civil Action No. 20-04378<br><br>**JUDGMENT & ORDER** |

**THIS MATTER** comes before the Court on a Motion for Default Judgment filed by Adam J. Sackowitz, Esq., counsel for Plaintiffs Elmer Romero ("Romero"), Kevin Ochoa ("Ochoa"), and Alirio Pereira ("Pereira") (collectively, "Plaintiffs"), against Defendants GYK Drywall, Inc. ("GYK"), Ceiba Services LLC ("Ceiba"), and Danilo Valle ("Valle") (collectively, "Defendants"),[1] pursuant to Federal Rule of Civil Procedure 55(b)(2); it appearing that on April 16, 2020, Plaintiffs initiated this action against Defendants, alleging, *inter alia*, violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56, *et seq.*;[2] it appearing that Defendants failed to answer

---

[1] Defendant Allstate Interiors, Inc., reached a settlement agreement with Plaintiffs. ECF No. 44. Following the settlement, on May 3, 2021, the parties stipulated to Allstate's dismissal with prejudice from the matter. ECF No. 34.
[2] The Complaint asserts the following causes of action: (1) overtime violations under the FLSA; (2) overtime violations under the NJWHL, (3) minimum wage violations under the FLSA, (4) minimum wage violations under the NJWHL, (5) failure to timely pay wages in violation of the New Jersey Wage Payment Law, (6) breach of contract against all Defendants, and (7) corporate combine.

1

or otherwise timely respond to the Amended Complaint and, accordingly, the Clerk of Court entered default against Defendants on October 2, 2020; it appearing that on January 22, 2021, Plaintiffs moved for a default judgment against Defendants ("First Motion for Default Judgment"); it appearing that on August 26, 2021, this Court granted in part and denied in part Plaintiffs' First Motion for Default Judgment ("First Judgment and Order") and directed Plaintiffs to file a renewed Motion within thirty days; and it appearing that Plaintiffs filed their renewed Motion for Default Judgment ("Second Motion for Default Judgment") on September 27, 2021; the Court having reviewed Plaintiffs' submissions in connection with the motion pursuant to Federal Rule of Civil Procedure 78, makes the following findings:

1. As noted *supra*, in the First Judgment and Order, this Court granted in part and denied in part Plaintiffs' First Motion for Default Judgment.[3]

2. First, I denied without prejudice Claims I through V and Claim VII because Plaintiffs failed to sufficiently allege each claim against each Defendant. First Judg. & Order ¶ 8. Specifically, I determined that Plaintiffs' allegations were insufficient to properly assess their employment relationship with Defendants, and thus, could not find that Plaintiffs were jointly employed by Defendants. *Id*. ¶ 11. Second, as to Claim VI, I granted it in part and denied it in part, granting Romero and Ochoa's claim for breach of contract against Valle, but denying, without prejudice, their breach of contract claims as to GYK and Ceiba because Plaintiffs failed to allege that they entered into a contract agreement with GYK or Ceiba.[4] *Id*. ¶ 12.

---

[3] In so doing, the Court found that the jurisdictional requirements were met, and the discretionary factors all weighed in favor of granting default judgment. First Judg. & Order ¶¶ 7, 13. Because the underlying facts affecting those determinations have not changed, I find the same here.

[4] Pereira was not involved in Claim VI.

3. On September 9, 2021, following the First Judgment and Order, and prior to the present motion, Plaintiffs' counsel sent a letter to the Court advising that Plaintiffs were abandoning their collective action claims pursuant to the FLSA, as well as their failure to timely pay wages claim pursuant to the NJWHL. ECF No. 37. As such, Count I for FLSA overtime violations is now only on behalf of individual Plaintiffs, and Count V for failure to timely pay wages under the NJWHL is dismissed. Furthermore, in the Sackowitz Declaration, Plaintiffs' counsel stated that after the Court's ruling in the First Judgment and Order, Plaintiffs are not pursuing a motion for default judgment for breach of contract as against GYK or Ceiba. Sackowitz Decl. ¶ 3 n.2. Therefore, the remaining claims are Claims I-IV, and Claim VII.

4. Because the facts and legal standard were discussed in the First Judgment and Order, I incorporate them here by reference. I will now proceed to examine whether Plaintiff has properly alleged facts to support the remaining claims.

## DISCUSSION

5. As an initial matter, I find that Plaintiff's Second Motion for Default Judgment corrected the defects in their allegations regarding whether Defendants are joint employers.

6. "The FLSA establishes federal minimum wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014). Under the FLSA, "an employer must pay its employees at least a specified minimum hourly wage for work performed, 29 U.S.C. § 206, and must pay one and one-half times the employer's regular wage for hours worked in excess of forty hours per week, *id.* § 207." *Davis*, 765 F.3d at 241. An employer who violates these provisions is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *Id.* (quoting 29 U.S.C. §

216(b)). The "NJWHL mirrors its federal counterpart." *Nieves v. Top Notch Granite & Marble LLC*, No. 10-1589, 2011 WL 2937352, at *3 (D.N.J. July 19, 2011) (citing *Crisostomo v. Exclusive Detailing, Inc.*, No. 08-1771, 2010 WL 2640183, at *5 (D.N.J. June 28, 2010) (finding that the NJWHL is analogous to the FLSA and therefore "interpretations construing FLSA are applicable")).

7. The Third Circuit has explained that the "first inquiry in most FLSA cases is whether the plaintiff has alleged an actionable employer-employee relationship." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014). An "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). And an "employee" is defined as "any individual employed by an employer." *Id.* § 203(e)(1). "To determine whether a particular entity is an employer, the court looks to the economic realities of the particular work environment." *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 563 (E.D. Pa. 2011). The economic realities test "focuses on whether an employee is economically dependent on an employer, rather than on the 'technical concepts' of employment." *Id.* In that connection, "[u]nder the FLSA, multiple persons or entities can be responsible for a single employee's wages as 'joint employers' in certain situations." *Thompson*, 748 F.3d at 148. "One such scenario occurs where both employers exert significant control over the employee, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." *Id.* (internal citation and quotations omitted). In such circumstances, "each joint employer may be held jointly and severally liable for the FLSA violations of the other, in addition to direct liability for its own violations." *Id.*

8. Determining whether a "joint employer" relationship exists requires a fact-intensive analysis of the alleged employer's "(1) authority to hire and fire employees; (2) authority to

4

promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012). These factors are not exhaustive, and if "a court concludes that other indicia of 'significant control' are present to suggest that a given employer was a joint employer of an employee, that determination may be persuasive[.]" *Id.*

9. Here, Plaintiffs' declarations support a finding that Defendants were joint employers. The facts show that GYK and Ceiba were interchangeable entities used by Valle to conduct business and employ Plaintiffs. First, Valle was clearly Plaintiffs' employer. Valle hired Plaintiffs, was present throughout their workdays, directed and supervised their work, determined their wages, and personally paid Plaintiffs their wages. Romero Decl. ¶¶ 6, 7, 21, 36; Ochoa Decl. ¶¶ 6, 7, 20, 36; Pereira Decl. ¶¶ 6, 7, 18, 21. GYK and Ceiba were also employers. Both Romero and Pereira were, at times, paid with GYK-labeled company checks. Sackowitz Decl. ¶ 27; Romero Decl. ¶ 8; Pereira Decl. ¶ 8. Plaintiffs were also required to travel to and perform work at 184 Redmond Street, New Brunswick, NJ 08901, which is GYK's address in its incorporation certificate, and upon information and belief, is Valle's mother's residence. Sackowitz Decl. ¶ 25, Ex. 5; Romero Decl. ¶ 13; Ochoa Decl. ¶ 12; Pereira Decl. ¶ 10. In addition, Plaintiffs state that Valle's secretary, Chribigedy Bautista, is an officer and director of GYK. Sackowitz Decl. ¶ 25, Ex. 5; Romero Decl. ¶¶ 9-11. Furthermore, when Ochoa asked for employment reference letters from Valle, Ochoa received a letter confirming Ochoa's employment with Ceiba. Ochoa Decl. ¶ 10. Notably, when Romero asked for a similar letter, Romero states that Ms. Bautista asked Valle whether the letter should be issued from GYK or Ceiba. Romero Decl. ¶ 10. Finally, Ceiba's incorporation

certificate states it is located at 222 Bond Street, Elizabeth, NJ 07206, which Plaintiffs believe to be Valle's home address. Sackowitz Decl. ¶ 30, Ex. 6; Romero Decl. ¶ 15; Ochoa Decl. ¶ 14; Pereira Decl. ¶ 12.

10. Given these facts, the *Enterprise* factors are met. Valle appears to directly employ and supervise Plaintiffs through both GYK and Ceiba, which Valle uses to officially employ Plaintiffs and conduct employment-related transactions. Valle has authority to hire and fire Plaintiffs, determine their work schedules and assignments, their pay rates, reimbursable activities, and supervise their work day-to-day. Sackowitz Decl. ¶¶ 22-24. Moreover, by providing company checks and letters of employment referral, Valle, through GYK and Ceiba, exhibited control of employee records and payroll. *Id*. As such, along with the other indicia that Plaintiffs are jointly employed by Defendants, such as the location of GYK and Ceiba's official addresses of incorporation, I find that Plaintiff has alleged facts sufficiently establishing that Defendants are joint employers.

11. Next, I find that Plaintiffs were non-exempt employees. "Although the FLSA grants employees the right to sue for overtime, '[c]ertain employees are exempt from the overtime wage requirements.'" *D'Alessio v. Cty. of Essex*, No. 18-10731, 2021 WL 5413987, at *3 (D.N.J. Nov. 19, 2021) (quoting *Raskas v. Lattice, Inc.*, No. 18-10332, 2019 WL 2865423, at *3 (D.N.J. July 3, 2019)). In that connection, the FLSA's minimum wage, 29 U.S.C § 206, and maximum hours provisions, 29 U.S.C. § 207, do not apply if the relevant employee falls under one of 29 U.S.C. § 213's listed exemptions. Notably, exemptions "are to be 'narrowly construed against the employer' who bears 'the burden of establishing an exemption.'" *Id*. (quoting *Pignataro v. Port Auth.*, 593 F.3d 265, 268 (3d Cir. 2010)). Here, Plaintiffs are day laborers that provide drywall installation and other construction tasks at various residential and commercial construction

6

projects in New Jersey and New York. Ochoa Decl. ¶ 5. Such employees do not fall within any of § 213's listed exemptions. Therefore, I find that Plaintiffs are non-exempt employees subject to the FLSA's minimum wage and maximum hours provisions.

12. With these preliminary issues settled, I find that Plaintiffs have sufficiently alleged Counts I through IV. In Counts I and II, Plaintiffs sufficiently allege that Defendants violated the FLSA and NJWHL overtime provisions.[5] Under the relevant provisions of both the FLSA and the NJWHL, qualifying employers must "pay at a rate not less than one and one-half times the regular rate to employees for hours worked in excess of forty hours a week." *Jones v. Does 1-10*, 857 F.3d 508, 514 (3d Cir. 2017) (quoting 29 U.S.C. § 207(a)(1)) (internal quotations omitted). "[T]o recover overtime compensation under the FLSA, 'an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference.'" *Davis*, 765 F.3d at 241 (quoting *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)). "In light of the FLSA's remedial purposes, an employee can meet his burden to establish that he performed work for which he was not properly compensated through estimates based on his own recollection." *Santiago v. Lucky Lodi Buffet Inc.*, No. 15-6147, 2016 WL 6138248, at *3 (D.N.J. Oct. 21, 2016) (internal quotations and citation omitted). Here, Plaintiffs allege that Romero regularly worked from 7:00 am until 3:30 pm with a 30-minute daily meal break, which resulted in an approximately 48-hour work week. Sackowitz Decl. ¶ 45. In addition, from the start of his employment in or around February 2018 until around September 2018, Plaintiffs allege Romero was required to transport other employees to and from Defendants' worksites in GYK and/or Ceiba-owned vehicles. *Id*. ¶¶ 44, 46. Thus, including

---

[5] Notably, the NJWHL mirrors its federal counterpart, and therefore, "interpretations construing the FLSA are applicable." *Crisostomo*, 2010 WL 2640183, at *5.

7

Romero's driving duties, he worked approximately 73.5 hours per week in that period. *Id*. ¶ 47. Plaintiffs further allege that in or around October 2018, Romero's hours changed slightly after Valle asked Romero to use his personal vehicle to transport employees, which adjusted his total hours to approximately 71.5 hours per week. *Id*. ¶ 49. Plaintiffs allege that regardless of the total hours worked, throughout his employment Defendants paid Romero a fixed rate of $150.00 per day. *Id*. ¶ 50. Romero was also not paid for his final three days worked. *Id*. ¶ 51. Ochoa faced similar issues. Ochoa, from the start of his employment in November 2017 until around September 2018, was also asked to drive employees in Defendants' vehicles and work on worksites, totaling 73.5 hours per week. *Id*. ¶¶ 64-67. Beginning around October 2018, Valle requested that Ochoa use his personal vehicle to transport employees, which dropped his hours to 70.5 hours per week. *Id*. ¶¶ 68-69. From the beginning of his employment until April 15, 2019, Defendants paid Ochoa a fixed rate of $150.00 per day, regardless of the total hours worked. *Id*. ¶ 70. From around April 16, 2019, until around May 1, 2019, Defendants paid Ochoa a fixed rate of $170.00 per day, regardless of the total hours worked. *Id*. ¶ 71. Ochoa was also not paid wages for his final three days. *Id*. ¶ 72. Plaintiffs also alleged that Pereira, who worked for Defendants from March 2018 until April 2019, worked approximately 48-hour work weeks at a fixed rate of $130.00, regardless of hours worked. *Id*. ¶¶ 90-91. As such, Plaintiffs have sufficiently alleged a legitimate cause of action for overtime violations under the FLSA and NJWHL.

13. In Counts III and IV, Plaintiffs properly alleged causes of action against Defendants for minimum wage violations under the FLSA and NJWHL. Notably, Plaintiffs do not allege that they were paid below the minimum wage for the entirety of their employment, but rather, they allege that Defendants failed to pay Pereira for his final eleven days of work, and Ochoa and Romero for their final three days of work. Am. Compl. ¶¶ 103-14, Sackowitz Decl. ¶¶ 51, 86, 95.

8

Under the FLSA, the minimum hourly wage is $7.25. 29 U.S.C. § 206(a)(1)(C). In New Jersey, where employers are required to pay the state minimum wage as established by N.J.S.A. 34:11-56a, the minimum wage was $8.44 in 2017, $8.60 in 2018, and $10.00 in 2019. U.S. Department of Labor, *State Minimum Wage Rate for New Jersey*, retrieved from FEDERAL RESERVE BANK OF ST. LOUIS, https://fred.stlouisfed.org/series/STTMINWGNJ. Here, Defendants reportedly paid no wages to Plaintiffs for these final days of work. Therefore, Plaintiffs alleged legitimate causes of action for minimum wage violations.

As to Count VII, I decline to find that Plaintiff has alleged a legitimate cause of action for "corporate combine." It is unclear that "corporate combine" is a legal theory available to Plaintiffs under New Jersey law. In New York, a state that recognizes corporate combine, parties to a corporate combine will be held jointly liable for amounts owed in an action where a corporation is found to be "a fragment of a larger corporate combine which actually conducts the business[.]" *Rosario v. Fresh Smoothies LLC*, No. 20-5831, 2021 WL 5847633, at *6 (S.D.N.Y. Dec. 9, 2021). Plaintiffs do not cite to, and the Court is unable to find, any cases in New Jersey where a cause of action for "corporate combine" was considered. Rather, in New Jersey, cases have appeared to use corporate combine as a method of imputing forum contacts of a subsidiary to a parent entity for personal jurisdiction purposes. *See, e.g.*, *New Jersey Reg'l Council of Carpenters v. Horton*, No. 08-1731, 2010 WL 2674474, at *3 (D.N.J. June 30, 2010) ("Under the 'single entity' theory, which is the most applicable to the facts here, courts will impute the forum contacts of the subsidiary to the parent when the two entities are, in reality, operating as a corporate combine."

(internal quotations omitted)). As such, I decline to find a cause of action for "corporate combine" here.[6][7]

## DAMAGES

14. As an initial matter, in the First Judgment and Order, this Court noted that Plaintiffs' allegations were insufficient to show that Defendants "willfully" violated the FLSA because they failed to allege that Defendants were specifically aware of their FLSA obligations. First Judg. and Order ¶ 8 n.3. Under the FLSA, a claim for unpaid compensation must be "commenced within two years after the cause of action accrued[.]" 29 U.S.C. § 255(a). However, if an employer's violations of the FLSA were willful, the FLSA limitations period is extended from two years to three years, "bringing another year of lost pay within the scope of the worker's claim." *Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 126 (3d Cir. 2017) (citing 29 U.S.C. § 255(a)). The Supreme Court has noted that Congress "intended to draw a significant distinction between ordinary violations and willful violations" when it chose to adopt this "two-tiered statute of limitations[.]" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988). As such, "[w]illfulness under the FLSA is established where 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.'" *Stone v. Troy Const., LLC*, 935 F.3d 141, 150 (3d Cir. 2019) (quoting *McLaughlin*, 486 U.S. at 133). Furthermore, as the Third Circuit has explained, "[w]illful FLSA violations require more specific awareness of the legal issues." *Souryavong*, 872 F.3d at 126.

---

[6] Notably, Defendants are already jointly and severally liable for damages in this matter through the FLSA. *Thompson*, 748 F.3d at 148 ("Under these circumstances, each joint employer may be held jointly and severally liable for the FLSA violations of the other, in addition to direct liability for its own violations.").
[7] Additionally, Plaintiffs have not raised the theory of alter ego.

10

15. Plaintiffs have, again, failed to sufficiently allege that Defendants' FLSA violation was willful. Between Plaintiffs' First and Second Motions for Default Judgment, Plaintiffs added three sentences explaining that Valle was at the worksites, and therefore, knew Plaintiffs worked more than 40 hours, and that Romero and Ochoa both complained to Valle about not receiving overtime. Second Mot. for Default Judg. at 9. While this information shows that Valle was aware of their hours and overtime requests, Plaintiff's allegations remain insufficient to show that Valle had "specific awareness" of his FLSA *legal* obligations regarding overtime payments. As such, Defendants have not sufficiently alleged willfulness. Therefore, because this suit was filed on April 16, 2020, and the statute of limitations period is two years from the commencement of this lawsuit, damages will be calculated beginning on April 16, 2018.

16. With respect to damages, the allegations in Plaintiffs' Complaint are not treated as true upon entry of a default judgment. *Bds. of Trs. of Operating Eng'rs Local 825 Welfare Fund v. Robert Silaey Landscaping. Inc.*, No. 06-1795, 2006 WL 3308578, at *3 (D.N.J. Nov. 13, 2006). A court may conduct hearings to determine the amount of damages or may decline to hold such hearings, "particularly where the amount claimed [is] capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.* at *4 (internal quotations omitted).

17. Here, damages are sum certain based on Plaintiffs' declarations. Although the Court does not have Plaintiffs' employment records, as noted *supra*, "[i]n light of the FLSA's remedial purposes, an employee can meet his burden to establish that he performed work for which he was not properly compensated through estimates based on his own recollection." *Santiago*, 2016 WL 6138248, at *3 (internal quotations and citation omitted). Accordingly, the damages within two years from the filing date of this lawsuit are:

| Plaintiff | Unpaid OT Wages | Unpaid Regular Wages | Liquidated Damages (Unpaid OT + Unpaid Regular Wages) | Total |
|---|---|---|---|---|
| Elmer Romero | $10,813.74 | $450.00 (3 days of work) | $11,263.74 | $22,527.48 |
| Kevin Ochoa | $11,284.49 | $510.00 (3 days of work) | $11,794.49 | $23,588.49 |
| Alirio Pereira | $3,479.68 | $1,430.00 (11 days of work) | $4,909.68 | $9,819.36 |
| **Total** | $25,577.91 | $2,390.00 | $27,967.91 | $55,935.82 |

18. Importantly, these amounts do not include Plaintiffs' settlement with Defendant Allstate Interiors, Inc ("Allstate"). As part of the settlement agreement, Allstate paid the following amounts to Plaintiffs and Plaintiffs' counsel:

- Elmer Romero: $2,305.03
- Kevin Ochoa: $2,855.34
- Alirio Pereira: $923.63
- Katz Melinger PLLC: $3,916.00 ($874.00 in costs and $3,042.00 in fees)

ECF No. 44. Plaintiffs agree that these amounts should be credited towards Plaintiffs' damages recovery and Plaintiffs' counsels' attorney's fees. *Id*. Therefore, the final damages are:

| Plaintiff | Damages Owed | Allstate Settlement Payment | **Final Damages** |
|---|---|---|---|
| Elmer Romero | $22,527.48 | $2,305.03 | **20,222.45** |
| Kevin Ochoa | $23,588.98 | $2,855.34 | **20,733.64** |
| Alirio Pereira | $9,819.36 | $923.63 | **8,895.73** |
| **Total** | $55,935.82 | $6,084.00 | **49,851.82** |

19. In addition to remedial damages, the FLSA provides for liquidated damages. The FLSA states that an "employer who violates the provisions of section 206 and section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal

amount as liquidated damages." 29 U.S.C. § 216(b). An employee is entitled to these liquidated damages unless the employer shows its actions were "in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation" of the FLSA. *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 187 (3d Cir. 1988). "Where, as here, [Defendants] have failed to appear, and [thus] have not presented any evidence regarding good faith, a court should award liquidated damages to the [P]laintiff." *Qu Wang v. Fu Leen Meng Rest. Ltd. Liab. Co.*, No. 11-608772, 2018 WL 1027446, at *5 (D.N.J. Feb. 23, 2018) (finding defaulting defendant liable for liquidated damages); *Santiago*, 2016 WL 6138248, at *3 ("As Defendants have failed to appear, presenting no evidence regarding good faith, the Court must award liquidated damages."). Therefore, Plaintiffs are entitled to liquidated damages in the total amount of $27,967.91, as included in the ¶ 17 chart, *supra*.[8]

20. Plaintiffs also request pre-judgment interest. Second Mot. for Def. Judg. at 11. But because the Court is awarding liquidated damages, Plaintiffs are barred from recovering pre-judgment interest. The Supreme Court, in denying pre-judgment interest to a party receiving FLSA liquidated damages, determined that because Congress implemented "recovery of liquidated damages as compensation for delay in payment of sums due under the [FLSA]," it would be inconsistent with Congressional intent to allow interest on such sums "in view of the fact that interest is [also] customarily allowed as compensation for delay in payment." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715 (1945). Indeed, "[t]o allow an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double

---

[8] Plaintiffs concede that they are not entitled to, and therefore, do not seek an additional liquidated damages award under the NJWHL. Second Mot. for Def. Judg. at 11 n.4; *see Qu Wang*, 2018 WL 1027446, at *5 (citing several cases for the proposition that a plaintiff prevailing on his FLSA claim cannot recover duplicative damages for his NJWHL claim).

13

compensation for damages arising from delay in the payment of basic minimum wages" which would "produce the undesirable result of allowing interest on interest." *Id.*; *see Zuniga v. AM Framing LLC*, No. 21-08250, 2022 WL 203234, at *5 (D.N.J. Jan. 24, 2022) ("Because I have awarded Zuniga liquidated damages, I will not award pre-judgment interest, as liquidated damages and prejudgment interest both serve to compensate an employee for losses caused by delayed receipt of wages to which he is entitled." (internal quotations omitted)); *Looi v. Wang*, No. 13-1684, 2015 WL 64650, at *3 (D.N.J. Jan. 5, 2015) (declining to award pre-judgment interest "because liquidated damages and prejudgment interest both serve to compensate an employee for losses caused by delayed receipt of wages to which he is entitled."); *see also Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1102 (3d Cir. 1995) (finding that Congress did not intend to incorporate the FLSA's damage provisions into the Age Discrimination in Employment Act, "including [the FLSA's] prohibition of concomitant awards for pre-judgment interest and liquidated damages."). For this reason, I decline to award pre-judgment interest.

## **ATTORNEY'S FEES**

21. Under 29 U.S.C. § 216(b) of the FLSA, a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." To determine reasonableness of a request for attorney's fees, "the Third Circuit has adopted the 'lodestar' method, by which the Court multiplies the number of hours reasonably expended by counsel by a reasonable hourly rate." *Acosta v. National Packaging, Inc.*, No. 09-701, 2010 WL 3001191, at *3 (D.N.J. July 28, 2010) (citing *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)). The party seeking attorney's fees bears the burden of proving reasonableness. *Id*. Plaintiffs are requesting $28,405.50 in attorney's fees and $874.00 in costs. Here, the Court has reviewed Plaintiffs' billing records and finds Plaintiffs'

request for attorney's fees are mostly reasonable. ECF No. 38-12, Ex. 8. The only portion of the records I find to be unreasonable are those pertaining to settlement with Allstate. Plaintiffs and Allstate agreed to settle this matter and jointly stipulated that each party will bear their own costs and attorney's fees. ECF No. 34. As such, after examining the billing records for Plaintiffs' attorneys' settlement activities, I will deduct 18 billed hours from Adam Sackowitz, Esq., totaling $6,750.00, and 5.1 billed hours from Nicole Ciliotta, totaling $1,453.50. ECF No. 38-12, Ex. 8. The remaining billing entries establish that Plaintiff's attorneys billed for reasonable and necessary legal work, such as drafting and editing the Complaint, updating clients on the case status, drafting a joint discovery plan, and drafting motions for default judgment, among other things. *Id*. Furthermore, Plaintiffs' two attorneys worked 65.2 hours on non-settlement issues in this matter and charged reasonable rates of $375.00 and $285.00. *Id*. Therefore, after deducting the settlement-related entries, the Plaintiffs' remaining attorney's fees are $20,202.00 and $874.00 in costs.

22. As noted *supra*, Plaintiffs' settlement agreement with Allstate included $3,042.00 in attorney's fees and $874.00 in costs. Because Plaintiffs' attorney's fees award has already been reduced by $8,203.50 for settlement-related work, the Court will not further deduct from the attorney's fees award. However, the Court will deduct the $874.00 in costs paid by Allstate as part of the settlement. Therefore, Plaintiffs' final attorney's fees award is $20,202.00 and $0.00 in costs.

**IT IS** ordered on this 29th day of April, 2022,

**ORDERED** that Plaintiffs' Motion for Default Judgment is **GRANTED** in part and **DENIED** in part; and it is further ordered

15

**ORDERED** that GYK, Ceiba, and Valle are jointly and severally liable for unpaid overtime, wages, and reimbursements in the amounts of $20,222.45 to Romero, $20,733.64 to Ochoa, and $8,895.73 for Pereira, for a total of $49,851.82; and

**ORDERED** that Plaintiffs are awarded attorney's fees in the amount of $20,202.00; and

**ORDERED** that the Clerk of the Court is directed to mark this matter as closed on the Court's docket.

s/ Freda L. Wolfson  
Hon. Freda L. Wolfson  
U.S. Chief District Judge